### PEOPLE ex rel. WAGNER v. HAGAN, Warden.

(Supreme Court, Appellate Division, First Department. June 8, 1900.)

CONSTITUTIONAL LAW—POLICE POWER—LYING-IN ASYLUMS.
    Pen. Code, § 288, subds. 2, 4, which make it a misdemeanor for one not a superintendent of the poor, or of an almshouse, or an institution duly incorporated for such purpose to maintain such a lying-in asylum without a license from the board of health, are constitutional, as within the police power of the state.

Appeal from special term, New York county.

Habeas corpus, on relation of Louisa Wagner, against James J. Hagan, warden of the city prison of the city of New York. From an order dismissing the writ, the relator appeals. Affirmed.

Argued before VAN BRUNT, P. J., and RUMSEY, INGRAHAM, and HATCH, JJ.

A. H. Hummel, for appellant.
Chas. E. Le Barbier, for respondent.

INGRAHAM, J. It appeared by the return to the writ that the relator was convicted by the court of general sessions upon an indictment charging a violation of subdivision 2 of section 288 of the Penal Code. The relator claimed to be entitled to be discharged upon the ground that this section of the Penal Code is unconstitutional and void, and no crime was, therefore, committed for which the relator could be held. By section 288 of the Penal Code it is provided that a person who, "not being a superintendent of the poor or a superintendent of alms-houses, or an institution duly incorporated for the purpose, without having first obtained the license in writing so to do from the board of health of the city or town wherein such females or children are received, boarded or kept, erects, conducts, establishes or maintains any maternity hospital, lying-in asylum, where females may be received, cared for or treated during pregnancy, or during or after delivery," is guilty of a misdemeanor. Nothing in this section would prevent a person from properly caring for

another boarding or living with her during pregnancy. It is the maintenance of an institution or lying-in asylum which is conducted or maintained for that purpose that is prohibited. Undoubtedly, to justify a conviction under this section, it would be necessary to prove that the person charged had either erected, conducted, or maintained such an institution,—an institution which has for its object the care of persons who are pregnant, or during or after their delivery. The requirement of a license for such an institution is to enable the public authorities to make proper sanitary regulations as to such institutions, so that inmates should not be exposed to infection, or the dangers that arise from improper medical attention; and also to insure that they shall not be perverted to improper uses. While no attempt is made to regulate the confinement of persons wherever they happen to be living, the legislature has deemed it proper to regulate institutions or hospitals established or maintained for the treatment of such persons, and such a regulation, it seems to me, comes clearly within the power of the legislature. The case of People v. Warden, 157 N. Y. 116, 51 N. E. 1006, relied on by the relator, is not an authority in support of her application. The statute there condemned did not attempt to regulate an institution maintained for the purpose of furnishing the people with medical treatment. It prevented any person from engaging in a certain business, namely, that of selling railroad tickets, and had no relation to the public health or the health of any individual. Chief Judge Parker, in delivering the opinion of the court, says "that it is within the power of the legislature to regulate the manner in which certain kinds of business may be conducted; that it may require one seeking to engage in a given pursuit to secure from the state, or one of its agents, a license; that it may require one pursuing any particular occupation to pay a tax for the privilege of conducting his business; and that, as a condition to the right of carrying on a business that, in the hands of incompetent persons, may be productive of injury to others, the legislature may require that, before engaging therein, one must satisfy the public authorities that he is competent and morally qualified to conduct it is conceded,"—and upon this statement of the law the validity of this provision may well rest. There can be no doubt that an institution in an unsanitary condition, receiving persons to be cared for during or after delivery, and in charge of incompetent persons, might cause great injury to those who become inmates thereof; and a provision that, before a person can maintain such an institution, he must, by procuring a license from the health authorities, satisfy them that the arrangements are such that the inmates will receive proper care and attention, is within the power of the legislature. It is quite unnecessary to cite authorities to sustain the exercise of this power by the legislature. So far as I know, it has never before been questioned. The courts of this state have again and again recognized and enforced the principle that regulations in relation to the health of the community are within the power of the legislature. Thus, in Re Jacobs, 98 N. Y. 110, it is said:

"Generally it is for the legislature to determine what laws and regulations are needed to protect the public health and secure the public comfort and safe-

ty; and, while its measures are calculated, intended, convenient, and appropriate to accomplish these ends, the exercise of its discretion is not subject to review by the courts."

And in People v. Havnor, 149 N. Y. 200, 43 N. E. 542, 31 L. R. A. 689, Judge Vann says:

"In the exercise of this power the legislature has the right, generally, to determine what laws are needed to preserve the public health and protect the public safety."

We think, therefore, that the provision under which the relator was arrested was constitutional, and that, the relator having been duly convicted, the court below was required to dismiss the proceeding.

It follows that the order appealed from was right, and should be affirmed, with costs. All concur.