(32 Misc. Rep. 577.)

## NEW YORK SANITARY UTILIZATION CO. v. DEPARTMENT OF PUBLIC HEALTH OF NEW YORK.

(Supreme Court, Special Term, New York County. October, 1900.)

1. CONSTITUTIONAL LAW—UNREASONABLE AND ARBITRARY ACT.
   Relator entered into a contract to dispose of all the garbage of the city of New York, and on January 1, 1897, completed a plant, at a cost of $500,000, for disposing of such garbage by treating it by steam at a high pressure; and the plant was located on an island within the borough of Brooklyn, three miles from any residence, and deemed not to be a nuisance. *Held*, that Laws 1900, c. 663, providing that it shall not be lawful for any person or corporation to establish, prosecute, or continue within the borough of Brooklyn the occupation of treating garbage with steam,

but not prohibiting such business in any other borough of Greater New York, is unconstitutional and void, as arbitrary and unreasonable, and not an act in the interest of the public generally.

2. SAME—TAKING PROPERTY WITHOUT DUE PROCESS OF LAW.
    Laws 1900, c. 663, is unconstitutional and void, as in contravention of Const. art. 1, § 6, in that it deprives the plaintiff of his property without due process of law.

3. SAME—IMPAIRING OBLIGATION OF CONTRACTS.
    Laws 1900, c. 663, is unconstitutional and void, as in contravention of Const. U. S. art. 1, § 10, in that it impairs the obligation of plaintiff's contract.

Action by the New York Sanitary Utilization Company against the department of public health of New York.   Demurrer to complaint overruled.

Wellman & Gooch (William N. Cohen, of counsel), for plaintiff.

John Whalen, Corp. Counsel (Henry Steinert, of counsel), for defendant.

ANDREWS, J.   The material facts, as alleged in the complaint, are as follows:   The plaintiff is a foreign corporation organized under the laws of the state of New Jersey, and is entitled to carry on its business within the state of New York.   On or about June 6, 1896, the plaintiff entered into a contract with the city of New York, as it then existed, whereby it agreed, among other things, to receive at the several dumps of the department of street cleaning in the city of New York all garbage and kindred refuse collected and delivered at said dumps by the carts of said department and by private carts, and to finally dispose of the same in such manner only as would render it unobjectionable in every respect.   Thereafter the plaintiff erected a plant for the disposal of such material on Barren Island, which was situated in the borough of Brooklyn, and completed the same on or before January 1, 1897.   Thereafter the plaintiff entered into a contract of a similar character with what was formerly the city of Brooklyn; the said contract with the city of New York being for the period of five years from August 1, 1896, and the said contract with the city of Brooklyn being for five years from January 1, 1897. On January 1, 1897, the plaintiff entered upon the carrying out of both of said contracts, and has continued to perform the same until the present time.   The location of this plant on Barren Island was not chosen by the plaintiff, but by the then superintendent of the street-cleaning department, Col. George A. Waring.   Said contract was awarded to the plaintiff on the condition that it would secure property on said Barren Island upon which it could erect and maintain said plant.   Said Barren Island is an island of about 900 acres in area, situated in Jamaica Bay, and far distant from any residential districts or inhabited portions of the city of Greater New York or of any village; being three miles distant from the nearest village, which is Hammel's Station.   The process used by the plaintiff in the disposition of this garbage is what is known as the "Arnold Utilization System"; such process being that of treating by steam, at high pressure, the garbage in sealed tanks.   Prior to the letting of said contract by the city of New York, the question of the disposition of the

waste of said city had become a serious problem to the city authorities; and after a full and lengthy consideration of that question by such authorities, and by a commission appointed by the mayor, it was unanimously reported by said commission that the garbage should be separated from the other refuse, and should not be destroyed by incineration, but by the utilization process now in use and operated by the plaintiff, and the report of said commission was examined and approved by a committee composed of many prominent citizens. Subsequently the contract for disposing of the garbage was made by public letting, and was awarded to the plaintiff, although its bid was $125,000 more than the lowest bidder, on the ground that its system was proper, satisfactory, and sanitary, and fully capable of carrying out the contemplated work.

At its last session the legislature of the state of New York passed an act known as "Chapter 663 of the Laws of 1900," which was an act to amend section 1212, c. 378, of the Laws of 1897, known as the "Greater New York Charter," in relation to offensive trades in the borough of Brooklyn, which act contained, among other things, the following provision:

"It shall not be lawful for any person or persons incorporated or unincorporated or any corporation or corporations, to carry on, establish, prosecute or continue, within the borough of Brooklyn, the occupation or trade or business of rendering or treating with steam or boiling, garbage, swill or offal."

The act contained further mandatory provisions, which required the board of health to cause the discontinuance of such trade or business and the immediate removal of the same from the said borough of Brooklyn; said board of health, however, being given power to extend the time of discontinuing such business for a period of not exceeding 12 months after the passage of said act. This action is brought to procure a final judgment restraining the board of health from enforcing the provisions of said act; and, as above stated, the defendant demurs to the complaint on the ground that it does not state facts sufficient to constitute a cause of action.

The constitutionality of the act is challenged upon the following grounds: First, that said act violates section 1, art. 1, of the constitution of this state, because it deprives the plaintiff, as well as all other persons in the borough of Brooklyn, of the right and privilege secured to all citizens of this state to pursue a lawful trade and business, harmless in itself, and in no way hurtful to the public; second, said act also violates section 6, art. 1, of the constitution of this state, because it deprives the plaintiff of its property without due process of law; third, that the act violates the fourteenth amendment of the constitution of the United States, because it abridges the privileges of the plaintiff, and deprives it of its liberty and property without due process of law, and denies it the equal protection of the law; fourth, that said act also violates article 1, § 10, of the constitution of the United States, because it impairs the obligations of a contract. It has been repeatedly decided that, except in a very clear case, the court at special term will not pronounce an act of the legislature to be unconstitutional,—especially one like this, which affects the public interest. After a full and careful con-

sideration, however, of the statutes and the arguments and briefs of counsel, I have reached the conclusion that this statute does clearly violate several of the constitutional provisions above referred to, and that it is the duty of the court to so declare.

1. The act in question does not declare the prohibited business to be a nuisance, and the complaint contains the following allegations:

"That plaintiff is carrying on the said business and operating the said plant without creating a nuisance, and in a manner in no way prejudicial to the health or comfort of any localities or individuals, and entirely to the satisfaction of the commissioner of street cleaning of the city of New York, the board of health of the city of New York, and the board of health of the state of New York, under the jurisdiction of which latter board Barren Island is especially placed. Your plaintiff is informed and believes that said Barren Island is the only feasible locality in or near the city of New York for the destruction of the garbage and dead animals of said city, and is the only proper place for the location of a plant for the rendering of the same."

The statute in question, while prohibiting the carrying on or the continuance of such trade or business in the borough of Brooklyn, impliedly permits it to be carried on in any of the other boroughs of Greater New York. Under these circumstances, the statute is obnoxious to the criticism that it is arbitrary, unreasonable, and was not an act in the interest of the public generally; that is to say, the public of Greater New York. The above-mentioned allegations of the complaint are, of course, admitted by the demurrer, and, for the purposes of the decision of this case, it must be regarded as conceded that not only does the statute not declare the business to be a nuisance, but also that the plaintiff is carrying on a business and operating its plant without creating a nuisance, or in a manner in no way prejudicial to the health or comfort of any localities or individuals, and entirely to the satisfaction of the commissioner of street cleaning of the city of New York, the board of health of the city of New York, and the board of health of the state of New York, under the jurisdiction of which latter board Barren Island is especially placed. Upon the papers before the court, therefore, the matter stands in the same position as it would if the legislature had passed a law declaring that the manufacture of locomotives should not be carried on in the borough of Brooklyn, although such manufacture did not create a nuisance, and was in no way prejudicial to the health or comfort of any localities or individuals. Moreover, while the business is prohibited in the borough of Brooklyn, it is permitted to be carried on in all the other boroughs of the city; and the act is obviously not for the benefit of all the public in Greater New York, but only for the supposed benefit of a smaller portion thereof. It is undoubtedly true that under what are known as the "police powers" the legislature can exercise a very wide discretion in enacting statutes for the preservation of the health and comfort of the citizens of this state. But its acts are subject to review by the courts, and where statutes have been passed which are found to be arbitrary and unreasonable, and which were not for the interests of the general public, they have been held to be in excess of its powers, and have been nullified by the courts. Taylor v. Porter, 4 Hill, 145; In re Jacobs, 98 N. Y. 98; People v. Marx, 99 N. Y. 386, 2 N. E. 29;

Forster v. Scott, 136 N. Y. 577, 32 N. E. 976, 18 L. R. A. 543; People v. Rosenberg, 138 N. Y. 410, 34 N. E. 285; Health Dept. of City of New York v. Rector, etc., of Trinity Church, 145 N. Y. 32, 40, 39 N. E. 833; People v. Havnor, 149 N. Y. 195, 43 N. E. 541, 31 L. R. A. 689; Colon v. Lisk, 153 N. Y. 188, 196, 47 N. E. 302; Lawton v. Steele, 152 U. S. 133, 137, 14 Sup. Ct. 499, 38 L. Ed. 385; Yick Wo v. Hopkins, 118 U. S. 356, 6 Sup. Ct. 1064, 30 L. Ed. 220; Minnesota v. Barber, 136 U. S. 313, 10 Sup. Ct. 862, 34 L. Ed. 455; Collins v. New Hampshire, 171 U. S. 30, 34, 18 Sup. Ct. 768, 43 L. Ed. 60.

2. Said statute also violates some of the above-mentioned constitutional provisions, because it deprives the plaintiff of its property without due process of law. The complaint alleges that the said plant erected by the plaintiff on said Barren Island has cost it between $500,000 and $600,000, and that said plant could not be operated or used by the plaintiff if the said act should be declared constitutional and operative; also, that to remove said plant to any other location would cost nearly or quite as much as the original construction thereof; also, that the plaintiff is annually receiving from the city of New York large sums of money for the performance of said contract, of which it would be deprived if the statute is a valid one. Of course, it cannot be claimed that such destruction of the property of the plaintiff is a taking of property, within the meaning of the constitution. It is also true that, if it were necessary for the preservation of the public health, the legislature would have a right to pass an act which, if enforced, would totally destroy the plaintiff's property. But it has been authoritatively held that the legislature has no power to destroy private property, or to take it for public use, without making compensation to the owner thereof; and acts which do not provide for the payment of private property, or acts which provide for the taking or destruction of private property without compensation are unconstitutional and void. Wynehamer v. People, 13 N. Y. 378. As above stated, the act in question requires the immediate discontinuance of said trade or business; and it contains no provision whatever for compensation to the plaintiff for the destruction of its plant, or for depriving it of the right to earn the compensation secured to it by said contract for the performance thereof. Moreover, it is well settled that an act of the legislature is not due process of law. It therefore follows that the objection that the act deprives the plaintiff of its property "without due process of law" is well taken.

3. It is also clear that the act violates a provision of the constitution of the United States, above stated, because it impairs the obligations of a contract. The contract entered into by the plaintiff with the old city of Brooklyn and the city of New York, which was a perfectly lawful contract at the time it was made, is abrogated and annulled by said statute, and also the provisions of said contract under which the city of Greater New York has an option, upon the expiration of the contract, to purchase said plant. It may be that the legislature could, for the preservation of the health of the public, abrogate and annul such a contract, but it could not do

so without making compensation to the injured parties. The demurrer to the complaint will be overruled, with leave to the defendant to answer, if it sees fit to do so, without payment of costs.

Demurrer overruled, with leave to defendant to answer, without costs.