(61 App. Div. 106.)

### NEW YORK SANITARY UTILIZATION CO. v. DEPARTMENT OF HEALTH OF CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. May 10, 1901.)

1. CONSTITUTIONAL LAW—GREATER NEW YORK CHARTER—RENDERING GARBAGE —INJUNCTION.

The act of April 25, 1900, amending section 1212 of the Greater New York charter, provided that it should not be lawful for any person to continue, within the borough of Brooklyn, the business of rendering or treating with steam or boiling garbage, swill, or offal, and directed the board of health to require the removal of such business. The plaintiff, under contracts with the cities of New York and Brooklyn, had erected an expensive plant, and was treating and disposing of the garbage of such cities by steam and boiling on an island in Brooklyn harbor, in a manner not injurious to health or offensive to any one, and, if such act was enforced, would be unable to perform its contracts, and the value of its plant would be destroyed. *Held*, that the act was unconstitutional, since it was limited in its operation to only one part of the city of Greater New York, and that not the most populous part; and hence was

not a proper exercise of the police power of the legislature in the regulation of matters affecting the public health.

2. SAME—DUE PROCESS OF LAW.

The act was also unconstitutional in that it deprived plaintiff of its property and of its right to continue its business without due process of law, and without compensation.

3. SAME—OBLIGATION OF CONTRACTS.

The act was also unconstitutional in that it impaired the obligation of defendant's contracts with the former cities of New York and Brooklyn, which obligation was transferred by the Greater New York charter to the present city of New York.

Appeal from special term, New York county.

Action by the New York Sanitary Utilization Company against the department of health of the city of New York. From a judgment (67 N. Y. Supp. 324) for plaintiff, defendant appeals. Affirmed.

The subject-matter of this appeal is the constitutionality of an act of the legislature of the state of New York which was passed without the acceptance of the city, but became a law April 25, 1900, with the approval of the governor. The act amended section 1212 of the Greater New York charter, and was to take effect immediately. That section now reads as follows:

"Sec. 1212. Offensive Trades.—It shall not be lawful for any person or persons incorporated or unincorporated or any corporation or corporations to carry on, establish, prosecute or continue, within the borough of Manhattan, the occupation or trade or business of bone boiling, bone burning, bone grinding, horse skinning, cow skinning, or the skinning of dead animals, or the boiling of offal; and it shall not be lawful for any person or persons, incorporated or unincorporated or any corporation or corporations, to carry on, establish, prosecute or continue within the borough of Brooklyn the occupation or trade or business of rendering or treating with steam or boiling garbage, swill or offal; and any such establishment or establishments or place of such business existing within the said boroughs respectively shall be forthwith removed out of said boroughs, and such trade, occupation or business shall be forthwith abated and discontinued: provided that nothing in this section contained shall apply to the slaughtering or dressing of animals for sale in said city. It shall be the duty of the board of health to ascertain whether any such trade or business is carried on, or continued, or established, within the limits aforesaid, and to make and cause an order to be served in the same manner as other orders of said department are made and served, directing the discontinuance of such trade or business, and the removal of all offensive or unwholesome materials or things appertaining to such trade or business. Any business hereby prohibited in any borough, if carried on in other boroughs within the city of New York shall be subject therein to reasonable regulations to be prescribed by the board of health, and may, upon its recommendation, be prohibited in any borough or part of any borough by the municipal assembly; but the board of health may, upon application, extend the time of discontinuing the business of rendering or treating with steam or boiling garbage, swill or offal, in the borough of Brooklyn for a period of not exceeding twelve months from and after the passage of this act."

The plaintiff, a corporation organized under the laws of the state of New Jersey, brought this action to restrain the department of health of the city of New York from taking any steps to enforce against it the provisions of the section of the amendment to the charter above quoted, and in its complaint it alleges that on the 6th of June, 1896, it entered into a contract with the then corporation of the city of New York, whereby it agreed, among other things, to receive at certain places in the then city of New York all garbage and kindred refuse collected and delivered by carts of the health department and by private carts authorized to collect such material, and to finally dispose of the same in such manner as to render it unobjectionable in any and every respect; that thereafter it began the erection of a plant for the disposal of

such material upon Barren Island, which said island was situated in Jamaica Bay, in the borough of Brooklyn, in the present city of New York; that such plant was completed on or about January 1, 1897; that prior to the completion of the said plant the then city of Brooklyn had awarded contracts of a similar character to certain persons in that city, and that those persons subsequently made arrangements with the plaintiff to receive garbage and kindred refuse of the city of Brooklyn, and to convey the same to Barren Island, there to be disposed of on practically the same terms and conditions as are imposed by the contract between the plaintiff and the city of New York continuing for a period of five years from the 1st of January, 1897; that on January 1, 1897, the plaintiff began the performance of the requirements of these contracts, and has received and conveyed from both cities of New York and Brooklyn all garbage and kindred refuse to its plant on Barren Island, and has there disposed of the same in accordance with the terms and conditions of the contracts, and has continued to do so; that the location of this plant on Barren Island was not chosen by the plaintiff, but by the then commissioner of street cleaning of the city of New York, and that Barren Island was selected for the location of the plant as the most appropriate place, and that the contract was awarded to the plaintiff upon condition that it would secure property upon Barren Island upon which it could erect and maintain its plant; that that island is far distant from any residential districts or inhabited portions of the city of Greater New York, or of any city or village, being three miles distant from the nearest village, namely, Hammel's Station; that the population of Barren Island is made up almost entirely of employés of the plaintiff and of two other factories engaged in the rendering of dead animals collected from the present city of New York as at present constituted, and of one factory engaged in the manufacture of fertilizer; that the process used by the plaintiff in the disposition of garbage is known as the "Arnold Utilization System," said process being treating by steam at high pressure of the garbage in sealed tanks, the destruction of the gases arising from said process by condensation, the pressing of said material after sterilization in the above manner, and the reclaiming of a certain portion of the residue divided into two products, crude grease and fertilizer; that, prior to the letting of the contract by the city of New York, the question of the disposition of the wastes of the said city had become a serious problem to the city authorities, and that in or about the year 1894 the then mayor of the city of New York appointed a commission of expert persons to consider and report upon some other system of disposition than the one then in use, namely, towing and dumping of the combined wastes at sea, which said method resulted in the pollution of the sea coast of Long Island on the one side, and New Jersey on the other, as far as Atlantic City; that such commission, after examining over 70 systems, unanimously reported that garbage should be destroyed by the process now in use and operated by the plaintiff, and that under subsequent administrations of the city of New York, and after investigating for over a year, by the then commissioner of street cleaning and his engineers, all the known methods of disposing of garbage and refuse, the system operated by the plaintiff was accepted; that such system is in operation in other cities of the United States; that the plaintiff is carrying on its business and operating its plant without creating a nuisance, and in a manner in no way prejudicial to the comfort of the inhabitants, and entirely to the satisfaction of the commissioner of street cleaning of the city of New York, the board of health of the city of New York, and the board of health of the state of New York, under the jurisdiction of which latter board Barren Island is placed; that the business is carried on as aforesaid without creating any nuisance, and without affording any injury to any locality or individual; that the plant erected by the plaintiff on Barren Island has cost the plaintiff between $500,000 and $600,000, and that it could not be operated or used by the plaintiff if said act should be declared to be constitutional and operative; that Barren Island is the only place or locality in or near the city of New York for the destruction of garbage and dead animals in the city, and is the only proper place for the rendering of the same; that to remove said plant to any other location would cost nearly or quite as much as the original construction thereof. It also appears by schedules annexed to the complaint that one of the terms of the contract between the city of New York and the

plaintiff secures to the city of New York the right of purchasing the plant at the expiration of the contract, or at any time within three months thereafter, either at an agreed price or a price fixed upon an appraisal of three disinterested parties; that the board of health, although application has been made to it by the commissioner of street cleaning of the city of New York, has not extended the time of the contract between the plaintiff and said city; that by the amendment of the Greater New York charter, above quoted, it is made a mandatory duty on the part of the board of health to ascertain whether the trade or business now carried on by the plaintiff in the manner above referred to is so carried on or is established within the borough of Brooklyn, and thereupon to cause the removal of the same out of said borough, and that the department of health intended and proposes to enforce the provisions of the act in accordance with the requirements thereof as against the business and property of the plaintiff, and that plaintiff is apprehensive, and verily believes that there is imminent danger that said department of health will so enforce the provisions of said act as against its business and property unless restrained therefrom by the order of the court, and that such action would result in irreparable injury to the plaintiff, which could not be compensated by money damages; that a considerable period of time will be necessary to the erection and putting in operation of any plant or plants proper for the disposal of the refuse of the city of New York, whether the same be in a separated or unseparated condition; that the amount of garbage disposed of by the plants of the plaintiff at Barren Island from the boroughs of Manhattan and Brooklyn, under its contracts, averages 900 tons per day throughout the year, and that during the summer months the amount of said garbage per day will approximate 1,500 tons, which said material must be disposed of daily; and that the rules and regulations of the war department of the United States, under the jurisdiction of which said department the harbor of New York is placed, forbid the conveying of said garbage through said harbor for the purpose of dumping the same in the waters adjacent to said harbor; and that it would be impossible to remove said garbage from the water front of the boroughs of Manhattan and Brooklyn for said purpose, or to dispose of the same in any other manner than the one now in use "during the approaching summer."

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, PATTERSON, and INGRAHAM, JJ.

Henry Steinert, for appellant.
William N. Cohen, for respondent.

PATTERSON, J.   The defendant demurred to the complaint on the ground that it does not state facts sufficient to constitute a cause of action.   It has not been urged in argument that the plaintiff is not in a position to maintain a suit of this character to test the constitutionality of the legislative enactment of which it complains, or that it, as a corporation, has not the right to sue.   The allegation of a threatened enforcement of the provisions of the law is, therefore, deemed sufficient to give it a standing in court, and it is settled that a corporation has the same right to the protection of constitutional provisions concerning property that natural persons have.   Road Co. v. Sanford, 164 U. S. 578, 17 Sup. Ct. 198, 41 L. Ed. 560.   By the interposition of the demurrer the allegations of fact contained in the complaint are admitted.   It stands conceded that the plaintiff's business as carried on not only does not constitute a nuisance, but that it is not detrimental to the public health; that it is carried on at the most appropriate place for that purpose within the territory of the city of New York; that the process employed by it in disposing of the garbage and refuse of a great city is the best and most convenient

that has been devised, and that the manner in which that process is used is in no way prejudicial to the comfort of the inhabitants of the city, and is carried on to the entire satisfaction of the city and state officials. Those are allegations which, upon an issue of fact, would be provable as facts, and therefore stand fully admitted. Concerning the averments of the complaint respecting property rights, they stand admitted in the same way. As we have seen, it is alleged that the plant of the plaintiff erected for the purpose of performing its contracts with the city in a locality not selected by it, but which it was compelled to resort to, cost between $500,000 and $600,000; that to prohibit its use by the enforcement of the provisions of the act authorizing the public authorities to compel the discontinuance of the plaintiff's business on Barren Island or the removal of the plant to some other place would amount virtually to a destruction of its property, and that it would expose the plaintiff to the loss of its contracts with the former cities of New York and Brooklyn, the obligations of which are transferred to the Greater City of New York by its new charter, and would also prevent an ultimate disposition of its property to the city of New York in case that municipal corporation should conclude to buy it. Thus we have two sets of facts, both of which being conceded, give rise to the question of the constitutionality of this enactment.

The learned judge at the special term held the act to be unconstitutional, and in that conclusion we concur. The most prominent and pertinent consideration in connection with the subject is the effect of that legislation upon existing rights. If it can be supported at all, it must be on the ground that the act was passed as a legitimate exercise by the legislature of the police power of the state. The proposition that the power resides in the legislature to determine "what laws and regulations are needed to protect the public health and secure the public comfort and safety," and that, "while its measures are calculated, intended, convenient and appropriate to accomplish those ends," the courts will not interfere, is admitted by the plaintiff in its widest scope; but, as is remarked in Re Jacobs, 98 N. Y. 110, 50 Am. Rep. 643, such acts of the legislature must have some relation to those ends. "Under the mere guise of police regulations, personal rights and private property cannot be arbitrarily invaded, and the determination of the legislature is not final nor conclusive. If it passes an act ostensibly for the public health, and thereby destroys or takes away the property of a citizen, or interferes with his personal liberty, then it is for the courts to scrutinize the act, and see whether it really relates to and is convenient and appropriate to promote the public health. It matters not that the legislature may, in the title to the act, or in its body, declare that it is intended for the improvement of the public health. Such a declaration does not conclude the courts, and they must yet determine the fact declared, and enforce the supreme law." In this connection, and referring to the case cited, it is said in People v. Gillson, 109 N. Y. 401, 17 N. E. 347: "Courts must be able to see, upon a perusal of the enactment, that there is some fair, just, and reasonable connection between it and the ends above mentioned." There are leading cases in the court of last resort of

this state which announce the rules upon which courts are authorized to declare invalid laws passed by the legislature under pretext of an exercise of the police power, but which are in reality merely arbitrary, and destructive of the constitutional right of the citizen.   In re Jacobs, supra; People v. Marx, 99 N. Y. 377, 2 N. E. 29; People v. Gillson, supra; Lawton v. Steele, 119 N. Y. 226, 23 N. E. 878, 7 L. R. A. 134; Colon v. Lisk, 153 N. Y. 188, 47 N. E. 302; People v. Warden of City Prison, 157 N. Y. 116, 51 N. E. 1006; Health Dept. of City of New York v. Rector, etc., of Trinity Church, 145 N. Y. 31, 39 N. E. 833.   The same cases illustrate the application of these principles to particular legislative enactments.   An examination of the statute now under consideration satisfies us that it is directed against the continuance of the business in a limited locality of a municipality. It is not, in its terms, an act for the regulation of that kind of business which would apply generally to the whole city of New York.   It is neither just, fair, nor reasonably connected with any end beneficial to the community.   As the learned justice who decided this cause at the special term says in his opinion, the legislature has, by implication, permitted the same business to be carried on in other parts of the city of New York, not excluding the most populous portion of its territory,—Manhattan Island.   The act only authorizes subordinate local officials to prohibit the business in certain of the boroughs of the city of New York, while it destroys that business in one specified borough, and in substance deprives this plaintiff of the use of its vast property in that borough, takes from it the benefit of its contract rights, and subjects it to the oppression of a statute which is operative only in a portion of the municipality.   Such a law we cannot but regard as arbitrary, and not framed in the interest of the general public of the Greater New York City.   It would appear, when construed with reference to existing conditions, to have been aimed merely at the destruction of particular business interests.   It is not an act for the general regulation of a business which might be conducted so as to impair the public health, or seriously to interfere with the convenience and comfort of the people of a great city.   We are of the opinion that the court at special term was right in holding that the act is in violation of the constitutional rights of the plaintiff, and particularly because, as affecting it, it would deprive it of its property, and of its right to continue or carry on its business, without due process of law, and without making compensation; and because it also impairs the obligation of its contracts with the former cities of New York and Brooklyn, which obligation is transferred by the Greater New York charter to the present city of New York; and also because it appears upon its face not to be an act properly regulating, within the limits of the police power of the state, a business which has heretofore been considered as legitimate, and authorized, and necessary to the welfare of the community.   The act itself does not even refer to that business as one which, for the public health, convenience, or comfort, should be altogether suppressed; but such is its effect upon this plaintiff.

The judgment appealed from should be affirmed, with costs.   All concur.