## COURT OF APPEALS,

### January 19, 1915.

# THE PEOPLE v. GREGORIO GIORDANO.

### (213 N. Y. 575.)

(1.) MURDER—CIRCUMSTANTIAL EVIDENCE.

A defendant cannot be convicted of the crime of murder in the first degree upon circumstantial evidence alone, unless there is positive proof of the facts from which the inference of guilt is to be drawn and that inference is the only one which can be reasonably drawn from those facts.

(2.) SAME—MOTIVE CANNOT OF ITSELF PROVE GUILT.

Although motive can, when other circumstances point to the conclusion of guilt, strengthen such circumstantial proof and thus aid in establishing the commission of the crime or the identity of the criminal, it can never, of itself, prove guilt.

(3.) SAME.

The record of the trial of a defendant convicted of murder in the first degree examined, and *held*, that evidence, offered to show that the defendant owned the implement with which the deceased was killed, was given by one witness only, whose testimony was unsatisfactory and contradictory and was in material respects controverted by other witnesses so that his testimony as to the facts from which the inference of defendant's guilt was drawn is not convincing, and while the proof directs suspicion against the defendant, it does not prove his guilt, and is insufficient to sustain the verdict of conviction.

APPEAL from a judgment of the Court of General Sessions for the county of New York, rendered October 23, 1913, upon a verdict convicting the defendant of the crime of murder in the first degree.

The facts, so far as material, are stated in the opinion.

*Samuel A. Singerman* for appellant.

*Charles S. Whitman, District Attorney (Robert C. Taylor* of counsel), for respondent.

SEABURY, J.:

The indictment upon which the defendant has been convicted charges him with feloniously and of his malice aforethought causing the death of Salvatora Giordano on August 10th, 1913, in the county of New York, with a certain (shoe) last. In considering the questions presented for review it is necessary to have in mind the environment in which the deceased and the defendant lived, the relationship existing between them and the circumstances proved to have surrounded the killing of the deceased. The judgment of conviction is not challenged because of any alleged technical objections but is assailed upon the more fundamental ground that the evidence offered upon the trial is insufficient to support the conclusion reached. We are called upon, therefore, to determine whether the conclusion at which the jury arrived is fairly and reasonably supported by the evidence. No direct or positive proof of guilt was offered. The evidence presented was wholly circumstantial. If the conclusion reached can be sustained it must be because it can fairly and reasonably be inferred from the facts proved. If neither the facts proved nor the inferences fairly and reasonably arising from them, establish the guilt of the defendant, then it is manifest that the judgment rests upon a basis insufficient in law to sustain it. The defendant has been in the United States for about two years. He was born in Vizzini, province of Catania, Italy, forty-one years ago. Prior to his coming to the United States he lived for a time in Buenos Ayres and from thence returned to Italy. From May, 1913, up to the time of his arrest he worked as a laborer upon subway work in the city of New York. The deceased was at the time of her death the

wife of the defendant.  She was thirty-eight years of age, and at
the time of her death had been in this country about six months.
When the defendant was in Italy he had met a brother of the
deceased and the prospective marriage of the defendant and
the deceased was discussed.  After the deceased arrived in the
United States the question of her marriage to the defendant was
again discussed.  Up to this time the defendant and the de-
ceased had not met, and the arrangement for the marriage was
conducted by Paola Montarto, who is referred to in the testi-
mony as a messenger.  A civil marriage was performed between
the parties March 31, 1913.  The evidence shows that before
this time the defendant and the deceased had met only two or
three times.  It appears that the parties did not consider the
civil marriage binding unless it was followed by a religious cere-
mony.  It was agreed between them that this religious ceremony
should take place three weeks after the civil marriage.  In the
meantime the deceased returned to the home of her brother.
The defendant seems to have exhibited some reluctance in en-
tering into the religious ceremony and a summons from the
Domestic Relations Court was served upon him.  After this the
religious ceremony was performed and the defendant and the
deceased lived together as husband and wife.  The defendant
explained that his reluctance to enter into the religious cere-
mony was due entirely to the fact that all his savings, amount-
ing to $300, had been stolen from him and that he was without
money to fulfill the obligations which he had assumed toward
the deceased.  However this may be, it does appear that after
this explanation was given to Montarto, the messenger, and to
the brother of the deceased, the defendant borrowed some money
from a friend and the religious ceremony was performed.
There is no proof in the record indicating that from that time
to the day of the death of the deceased they did not live hap-
pily together.  The defendant continued his work as a laborer
earning $1.60 per day and the deceased worked in a rag shop

earning from $4 to $5 a week. This is substantially all we know of the defendant and the deceased prior to August 10th, 1913, when the deceased was killed. The 10th of August fell upon a Sunday and consequently the defendant and the deceased were not required to go to work. Most of the day they spent at their home and had breakfast, lunch and dinner together. The defendant testified that in the evening his wife went out to get some one to write a letter for her to her brother in Chicago. Mrs. Cucce, who was called as a witness for the prosecution, testified that the deceased called upon her at 7:30 and that she wrote a letter for her to her brother and that in the letter the deceased sent her husband's regards to her brother. Mrs. Cucce says that the deceased left about 8 o'clock. The deceased and the defendant were seen together at about this time by several witnesses in the neighborhood of their home in Mott street. This is the last time that any person, other than the defendant, claims to have seen the deceased alive. The defendant testified that they went home, that he told his wife he was tired and he went to bed, that his wife said that she had forgotten to mail her letter and that she would go out and mail it. The defendant says that he fell asleep and did not wake up until early the next morning and that at that time his wife was not in the room. Between 10:10 and 10:30 on Sunday night, an engineer named Allen, coming from his motor boat, which he had left at Cold Spring Harbor, and walking through a stretch of woods known as Cold Spring Grove, found the body of a woman lying on her back in the road. It was the dead body of the deceased. Cold Spring Grove is at Inwood, which is near 207th street in the county of New York and is about ten miles from the home of the deceased. At 9:45 that night a grocer named Muhler, in company with seven other men, coming from their boats which they had left at the harbor passed over the same road and saw no one at that time. From this testimony it is evident that the deceased was killed after 9:45 and before

10:10 or 10:30 that night.  The place where the body was found was a lonely spot in the woods.  The body was found in " a pool of blood."  The skin, muscles and soft tissues of the neck had been entirely severed down to the spinal column. There was a large wound on the back of the head just above the right ear and another similar wound on the left side a little lower down behind the ear.  In addition to these wounds there were about twenty-five small wounds on the face and scalp. The coroner's physician found an extensive compound fracture of the skull and gave it as his opinion that this fracture was the cause of death.  When Allen discovered the body he communicated with the police authorities, who responded shortly thereafter, and from that time they had the body under observation until it was removed to the morgue.

About five feet away from the body a knife was found, and about six feet away from the body a shoe last " full of blood stains " was found.  It is not claimed that the ownership of the knife was ever discovered, and no testimony upon this subject was offered, and it plays no other part in this case.  The iron on the shoe last is said by a police officer to have " fitted into the cut on the head " of the deceased, and one of the physicians who examined it and examined the body of the deceased gave it as his opinion that it could have caused the death of the deceased. This shoe last may be said to be the pivot upon which this case turns.  The prosecution claims that it was the property of the defendant, and the acceptance of this claim by the jury is the only basis upon which the judgment of conviction rests.  If this shoe last was not the property of the defendant, then it must be conceded that there is no evidence in the record sufficient to sustain the hypothesis of the defendant's guilt.  This is the alleged fact from which the inference of guilt has been drawn.  The other circumstances which are said to implicate the defendant will be adverted to below; but it must be conceded that unless the shoe last was the property of the de-

fendant, these circumstances standing alone, are without probative value. As the defendant's ownership of the shoe last is the sole circumstance upon which the hypothesis of guilt is predicated it is necessary that this fact should be convincingly established. If this fact were not established with certainty the inference of guilt is without certitude. It is an elementary proposition that in all cases where the law acts exclusively upon circumstantial evidence, the fact from which the inference is drawn must be established with certainty. In all cases where the conclusion of guilt rests wholly upon circumstantial evidence it is necessary, as was said by Judge GRAY in People v. Harris (136 N. Y. 423, 429), that " there shall be positive proof of the facts from which the inference of guilt is to be drawn and that that inference is the only one which can reasonably be drawn from those facts." It is, therefore, a matter of vital importance to inquire into the proof by which this alleged fact is claimed to have been established. Before doing this it should be pointed out that it is a conceded fact in the case that the defendant was the owner of a shoe last other than the shoe last which was found at the scene of the crime. The defendant testified that he owned but *one* shoe last, and several witnesses called in his behalf identified the shoe last that was found in his room as his property and that they had often seen him use it. There is no evidence in the case that the defendant owned two shoe lasts. Even the witness Bontorno says that the defendant owned but *one* shoe last. If the defendant had owned but one shoe last and a shoe last was found at the scene of the crime and no shoe last had been found in the defendant's room, that circumstance would have tended strongly to establish that the defendant was the owner of the fatal shoe last. Such, however, is not the testimony. It is conceded that a shoe last other than the shoe last that was found near the body of the deceased was found in defendant's room, and the evidence of several witnesses satisfactorily established that this shoe last which was

found in the defendant's room had been the property of the defendant for a long period of time.

The only person who disputed that the defendant owned this shoe last was the witness Bontorno, the brother of the deceased, and his testimony on the subject consisted merely in his assertion' that the defendant owned but *one* shoe last, and that the shoe last that he owned was the one found at the scene of the crime. The testimony of Bontorno as to the defendant's ownership of the shoe last which was found near the body of the deceased was not satisfactory. This conclusion is evident because Bontorno stated the single circumstance which he claimed enabled him to identify the fatal shoe last as the property of the defendant. When asked to state to the jury what there was about the particular shoe last that enabled him to identify it as the shoe last belonging to the defendant, he said, " Because there is an empty space here " (indicating). By the " empty space " the witness indicated the opening on the last and testified that that was the only means of identification that he had. It is to be borne in mind that the shoe lasts were not " pairs " and did not belong to a set, and that the shoe last found near the body was apparently such a last as a cobbler might use. It was also proved that the shoe last found near the scene of the crime fitted the shoes of the defendant, but as the ordinary cobbler's last may be said to fit a variety of shoes, this circumstance hardly seems significant. The unsatisfactory conclusion of Bontorno that the fatal shoe last was the property of the defendant, and the fact that it fitted the defendant's shoes, constitute the only circumstances in the case tending to establish that it was the property of the defendant. Moreover the testimony of Bontorno upon other features of the case was contradictory. In testifying as to when he last saw his sister alive he said that he saw her at his home *alone*; but subsequently changed this testimony and said that he saw his sister leaving his house with the defendant. Other witnesses called by the

prosecution testified that at the time when Bontorno said he saw the deceased leave his house with the defendant, the defendant was upon the street talking with them, and that the deceased came up and joined him. In view of the fact that the testimony of Bontorno was unsatisfactory and contradictory and was in material respects controverted by other witnesses, his assertion that the defendant owned the fatal shoe last is not convincing. This is especially so in view of the fact that he did not claim ever to have seen the defendant use this shoe last or to recall any occasion when he had seen it in the defendant's possession. His identification of the shoe last rested entirely, according to his own testimony, upon the opening (" empty space ") in it. An examination of this record shows that, in the last analysis, this defendant has been condemned to death because Bontorno identified this shoe last as the property of the defendant. A diligent search of this record convinces us that the defendant's ownership of this shoe last was not satisfactorily proved. With the failure to esablish this fact the whole case of the prosecution crumbled. In the absence of satisfactory proof establishing the defendant's ownership of the shoe last there is no proof against the defendant which can be said to rise above the dignity of conjecture or suspicion. That this is so will become apparent from a reference to the other circumstances said to have been proved. The other circumstances which, together with the defendant's alleged ownership of the shoe last, are said to lend support to the hypothesis of guilt consist in the testimony of Lancia and Digilio and in the alleged proof of motive. These circumstances must be briefly considered. Lancia testified that on the night of August 10th he slept on the fire escape outside of his apartment, and that about 2 o'clock in the morning he was awakened by hearing one of his children cry, and that he looked over to the defendant's apartment, and that in that apartment the gas was lighted. Lancia said he had never known the defendant, and the identification of the defendant's

room was not satisfactorily made.  The whole story of this witness seems hardly credible, but even if it be accepted as true it is concededly of slight probative force.  Officer Digilio testified that when he questioned the defendant after his arrest, and when he was in the hosiptal, the defendant told him that when he woke up Monday morning and went to work he left his wife in bed.  Upon this point he was contradicted by the defendant.  There were other points upon which the testimony of the defendant was contradicted, to which it is not necessary specifically to refer.  Assuming that the defendant did make a false statement to Digilio that fact when considered in connection with other evidence of guilt might serve to strengthen such other evidence, but it could not serve as a substitute for other proof, or, standing alone, be deemed sufficient to warrant his conviction.

There remains to be considered only the alleged proof of motive.  The existence of motive is sought to be inferred from the fact that the defendant some four months before had shown reluctance to enter into a religious ceremony of marriage, and that he did so only after a summons had been issued to him from the Domestic Relations Court, and the testimony of Digilio that when, after the defendant's arrest, he asked the defendant if his wife had any trouble with anybody the defendant said:  " No, except she said I was not the proper husband for her.   *   *   * It appeared that she didn't care anything about me, probably wanted to go with some one younger than I was."  These are the only circumstances which it is claimed by the prosecution show that the defendant desired to be rid of his wife.  We realize, what has been exemplified in many cases, that an apparently slight motive may sometimes prompt one to the commission of a great crime, and that the insignificant character of the motive may or may not induce the commission of the crime, in proportion to the depravity of the mind that entertains it.  Motive can never, of itself, prove guilt, though it may, when

other circumstances point to the conclusion of guilt, strengthen such circumstantial proof of guilt and thus aid to establish the commission of the crime or the identity of the criminal. It is conceded that the murder was a bloody one, that it had been preceded by a struggle, that the body was found in a pool of blood, and the shoe last had blood stains upon it; and yet there is no evidence in the case that any blood stains were discovered upon the clothing of the defendant. In considering this case our judgment has necessarily been based upon the record which is now before us. It may be that upon another trial other evidence can be presented as to the defendant's alleged ownership of the shoe last or as to other circumstances which will tend to connect the defendant with the commission of the crime. However this may be, it is clear that while the proof in the present record directs suspicion against, it does not prove the guilt of the defendant. In the absence of satisfactory proof that the defendant was the owner of the shoe last there was neither direct nor circumstantial proof pointing to the conclusion of guilt. The remote and trifling character of the circumstances upon which the existence of motive is sought to be predicated and the absence of any other satisfactory proof of guilt render the case of the prosecution barren of evidence which fairly and reasonably supports the conclusion of guilt.

For the reasons given the judgment of conviction should be reversed and a new trial ordered.

WILLARD BARTLETT, Ch. J., CHASE, COLLIN, HOGAN, MILLER and CARDOZO, JJ., concur.

Judgment of conviction reversed and new trial ordered.