Burke, J.
 

 This article 78 proceeding was instituted by petitioner to compel the Board of Hospitals of the City of New York to issue to him a license permitting him to operate a
 
 *373
 
 private proprietary hospital. The hoard had denied the application since petitioner had not complied with new regulations of the New York City Hospital Code, which became effective on October 1, 1956. This code superseded prior regulations, and was promulgated pursuant to subdivision 2 of section 583-a of the New York City Charter. The code made some changes in the rules and regulations governing the maintenance and operation of private proprietary hospitals. These regulations required that, in other than private rooms, each bed must have a floor area of 70 square feet. Insofar as private rooms were concerned, those hospitals licensed before 1956 were to have this same minimum floor area; those first licensed after the effective date of the new regulations were required to provide 100 square feet of floor area. The regulations also required an increase in the nursing staff for such hospitals.
 

 Special Term .denied petitioner’s application to review and annul the determination of the board. This order was unanimously affirmed by the Appellate Division.
 

 Petitioner claims that insofar as the new regulations require a minimum floor area for each bed, and an increase in the professional nursing staff, they not only constitute unreasonable discrimination, but also violate the due process provisions of the State and Federal Constitutions. (U. S. Const., 14th Arndt.; N. Y. Const., art. I, § 6.) In regards to the equal protection argument, it is urged that since these regulations do not equally apply to municipal hospitals and voluntary nonprofit hospitals, as well as private proprietary hospitals, there is unreasonable discrimination.
 

 The police power of the State is the least limitable of all the powers of government.
 
 (Block
 
 v.
 
 Hirsh,
 
 256 U. S. 135, 155;
 
 Queenside Hills Co.
 
 v.
 
 Saxl,
 
 328 U. S. 80, 83.)
 
 “A
 
 legitimate public purpose may always be served without regard to the constitutional limitations of due process and equal protection ’ ’.
 
 (People
 
 v.
 
 Arlen Service Stations,
 
 284 N. Y. 340, 344;
 
 People
 
 v.
 
 Perretta,
 
 253 N. Y. 305, 309;
 
 People ex rel. Durham Realty Corp.
 
 v.
 
 La Fetra,
 
 230 N. Y. 429;
 
 New York ex rel. Bryant
 
 v.
 
 Zimmerman,
 
 278 U. S. 63.)
 

 It cannot be disputed that hospitals come directly within the ambit of the police power since they are institutions which directly deal with the health of the citizenry. Where the
 
 *374
 
 hospital has been instituted by some branch of the Government— he it local or State — the hospital is already under the direct control of the Government. Such is the case, for example, with municipal hospitals in the City of New York. These hospitals are, under the New York City Charter, to be maintained and operated by the Department of Hospitals of that city (New York City Charter, § 583-a, subd. 1). Nonprofit voluntary institutions are not subject to the regulation of the Department of Hospitals (New York City Charter, § 583-a, subd. 2; see, e.g., Social Welfare Law, § 21; 1948 Atty. Gen. 247). It is only private proprietary hospitals which come within the licensing and regulatory power of the Department of Hospitals. The New York City Charter authorizes the Board of Hospitals to promulgate the necessary rules and regulations for private proprietary hospitals to promote the public health and welfare (New York City Charter, § 583-a, subd. 2). Thus, we can see that the Legislature itself, in respect to private proprietary hospitals in New York City, has established them in a separate class and has subjected them to special rules and regulations by the Board of Hospitals. It is easy to see why such a distinction was made. These other institutions come under the close scrutiny of either the city or the
 
 State;
 
 private hospitals, without regulation, do not (see
 
 People ex rel. Wagner
 
 v.
 
 Hagan,
 
 52 App. Div. 387, 389).
 

 Furthermore, while these regulations apply only in terms to private proprietary hospitals, it is not shown and, indeed, the record is devoid of any evidence as to whether there are any similar regulations in other statutes or rules applicable to city hospitals or voluntary hospitals.
 

 Under the regulations in question, all private proprietary hospitals are treated alike. Equal protection is accomplished when all of the same class are treated in a like manner.
 
 (Queenside Hills Co.
 
 v.
 
 Saxl, supra.)
 
 That one class is treated differently than other classes can give rise to no complaint under the equal protection clause.
 

 It is urged that the hospital in question was conducted in compliance with the regulations in the superseded hospital code, and the new hospital code which reduces the bed capacity of the hospital constitutes an unlawful taking, violating due process of law. The argument, in effect, is that petitioner has
 
 *375
 
 a ‘f non-conforming use ’ ’, which was exercised prior to the effective date of the new regulations, and, therefore, should be permitted to continue in effect as long as petitioner continues in business or chooses to operate under the former regulations. It is clearly settled that “in no case does the owner of property acquire immunity against the exercise of the police power because he constructed it in full compliance with existing laws ”.
 
 (Queenside Hills Co.
 
 v.
 
 Saxl, supra,
 
 p. 83; see, also,
 
 Hadacheck
 
 v.
 
 Los Angeles,
 
 239 U. S. 394, 410;
 
 Hutchinson
 
 v.
 
 Valdosta,
 
 227 U. S. 303.) If authority is needed for such a proposition in this State,
 
 Health Dept.
 
 v.
 
 Rector, Church Wardens & Vestrymen of Trinity Church
 
 (145 N. Y. 32, 43-44) will substantiate this position.
 

 The only question then that we must consider in this case is the reasonableness of the regulations. There can be no doubt that they are calculated to promote the health and welfare of the public generally.
 
 Health Dept.
 
 v.
 
 Rector, Church Wardens & Vestrymen of Trinity Church (supra)
 
 suggests that the cost of expenditures incurred as a result of the-legislation must be reasonable. Where there are two or more beds in a room, the minfrrmm space requirements can be readily met by the removal of one or more beds. Hence, the main loss here is the loss of future profit. We cannot say as a matter of law that the minimum space requirements are unreasonable as a matter of law, and hence it follows that the Board of Hospitals did not act in an arbitrary manner in refusing a license to petitioner under the regulations.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Van Voorhis, J. (dissenting).
 

 The problems presented by this litigation have their origin in an amendment to the Hospital Code and Regulations promulgated by the New York City Board of Hospitals (§ 56, subd. 4), effective October 1, 1956, which enlarged the floor area required to be occupied by each bed in double rooms in a proprietary hospital, and added to the number of professional nurses required to be in attendance. Appellant claims to have complied with these nursing requirements, but objects to increasing the floor space to be occupied by each bed in other than single rooms from about 62.5 square feet, as formerly, to 70 square feet, as newly required. In adopt
 
 *376
 
 ing the new regulation, the Board of Hospitals took account of the fact that it would be difficult to reconstruct existing single rooms so as to enlarge the floor space, and therefore provided that each single room in institutions licensed before October 1, 1956 might continue to have a floor area of at least 70 square feet, whereas new hospitals, licensed after that date, would be required to have a minimum floor area of 100 square feet. When it came to other than single rooms, however, no corresponding dispensation was allowed in the case of existing structures. The new regulation directs that each bed in other than single private rooms shall have a floor area of at least 70 square feet. The problem introduced by this requirement is that there are numerous private rooms designed for two patients with a space area of 125 square feet. That allows 62.5 feet to each bed. Unless the hospital is rebuilt in these areas, the requirement that each bed shall occupy a space of at least 70 square feet would require removal of one of these beds, leaving an area of 125 square feet, for the other bed. That would be much larger than any minimum requirement for existing or newly constructed single rooms. The consequence would be to reduce the authorized bed capacity of this hospital from 130 beds to 100 beds.
 

 This hospital was constructed in 1929. It was bought by appellant in 1940, and has been operated by him since that date. Licenses for its operation have been issued annually by the city’s Department of Hospitals. During the previous 25 years, no minimum floor area was prescribed for each bed, it being simply required that
 
 ‘ ‘
 
 All beds used for patients shall be at least three feet apart where arranged in series and at least two feet from lateral adjoining walls.”
 

 The petition to compel a renewal of appellant’s hospital license has been denied on the ground that the new requirement of a minimmn of 70 square feet to a bed has been validly imposed and has not been complied with. Appellant contends that this new regulation deprives him of his right to pursue a lawful trade or business in violation of the State and Federal Constitutions. The principal ground on which its validity is challenged is that the equal protection of the law is denied for the reason that this regulation applies exclusively to private proprietary hospitals which provide hospital care for but 20% of paying patients in Hew York City, as contrasted with 80%
 
 *377
 
 provided for paying patients by the voluntary or city hospitals which are not limited as to bed capacity. If 7.5 additional square feet are necessary for the proper care of patients in proprietary hospitals, so as to bring the bed area to 70 square feet, it is difficult to understand why the same considerations affecting public health should not also apply to the larger number of patients hospitalized in these other institutions, nor is there reason why they should not likewise be extended to the nonpaying patients in city and other hospitals. Although the reach of the police power is wide, it must be exercised evenly under the Federal and State Constitutions so as to bear upon all who are affected by it without discrimination
 
 (New York Sanitary Utilization Co.
 
 v.
 
 Department of Health,
 
 32 Misc. 577, affd. 61 App. Div. 106). The police power must serve the interests of the public generally as distinguished from those of a particular class, must be related to the advancement of public health, safety or welfare and its exercise will be restrained where it has some other object although ostensibly directed to the furtherance of one of the above-mentioned purposes
 
 (People ex rel. Wineburg Adv. Co.
 
 v.
 
 Murphy,
 
 129 App. Div. 260, affd. 195 N. Y. 126;
 
 Health Dept.
 
 v.
 
 Rector, Church Wardens & Vestrymen of Trinity Church,
 
 145 N. Y. 32;
 
 New York Sanitary Utilization Co.
 
 v.
 
 Department of Health, supra).
 

 Appellant asserts that private proprietary hospitals (the Association of Private Hospitals, Inc., has filed as
 
 amicus curiae
 
 representing 37 member proprietary hospitals) are not regarded with favor by the City of New York and charges, in effect, that this and other harassments are designed to compel them eventually to cease operation. The city takes note of the unequal incidence of this regulation upon proprietary hospitals and attempts to meet the contentions by arguing that there is a basis for classification in that city hospitals and voluntary hospitals are not profit-making enterprises. The brief for the city states: “We argue that there is a reasonable basis for distinguishing between profit-making enterprises such as petitioner’s and those not operated for profit, on the ground that where the profit motive is involved there is a need for regulation to insure that the desire to increase income and cut expenses does not result in dangerous overcrowding and understaffing.”
 

 
 *378
 
 This argument is unusual,and, in our view, unsound. Motive, we have been told in criminal cases, is not a basis for conviction, but is of evidentiary value in determining whether the accused has been guilty of the conduct which constitutes the crime
 
 (People
 
 v.
 
 Seppi,
 
 221 N. Y. 62, 70;
 
 People
 
 v.
 
 Giordano,
 
 213 N. Y. 575, 584).
 
 ‘ ‘
 
 Motive can never, of itself, prove guilt ”, as was said in
 
 Giordano,
 
 and, conversely, where the act has been committed that the law forbids, motive is unnecessary to be shown
 
 (People
 
 v.
 
 Feigenbaum,
 
 148 N. Y. 636). According to the reasoning of respondent, if a voluntary or city hospital provides 62.5 square feet to a bed, that meets with approval for the reason that it is not operated for profit. A proprietary hospital which has done the same thing is condemned on the basis that it acted for gain and, therefore, from what is assumed to be a sordid motive. If a party is authorized or forbidden to do what he does, the reasons which prompted him are ordinarily unimportant.
 
 “
 
 The assignment of an improper motive, or reason, for doing an act, which the municipality was authorized to perform could not make that act illegal.”
 
 (Chase-Hibbard Milling Co.
 
 v.
 
 City of Elmira,
 
 207 N. Y. 460, 467.)
 

 If regulations like this are to be upheld or struck down according to the self-interest or degree of unselfishness of the actor, it would be necessary to consider the pecuniary interest of the doctors themselves in the voluntary or city hospitals, and to weigh the animating motives of the trustees or public officers who are responsible for their operation. The city hospitals and voluntary hospitals are also under unremitting pressure to admit patients due to Blue Cross and Blue Shield Plans and other forms of hospital or medical insurance and due to the cost of building new hospitals. Lack of an adequate number of hospital beds and nursing attendants to fulfill the demand is well known. Hospitals everywhere are notoriously overcrowded. The point is not that reasonable regulations are unlawful to prevent overcrowding, but that institutions cannot be discriminated against on the theory that the same act is commendable if performed by one but reprehensible if done by another.
 

 Neither is it an answer to the discriminatory operation of this regulation that the Board of Hospitals does not have
 
 *379
 
 jurisdiction over paying patients in voluntary hospitals. Section 583-b of the New York City Charter gives the Board of Hospitals jurisdiction over city hospitals as well as proprietary hospitals, and over voluntary hospitals to the extent that they care for the overflow from the city hospitals at city expense. The city hospitals not affected by these limitations have 19,899 beds according to the latest annual report of the Department of Hospitals (1957) against 4,548 beds for the proprietary hospitals. This is a sufficient indication of unlawful discrimination in this regulation, even if the voluntary hospitals were to be left out of account.
 

 The regulation is sought to be justified as an exercise of the police power upon no ground except promotion of the public health. If the health of patients in proprietary hospitals is affected, then the health of patients in the other hospitals in the city must be neglected. They are subject to no such regulation. There is no rational basis for distinction on the ground of public health, which is the only ground on which the police power can be invoked in this case. The majority opinion states that there is no evidence that the voluntary and city hospitals are not subjected to similar restrictions regarding bed area. The petition alleges that the other hospitals are free from these restrictions which are imposed on the proprietary hospitals alone. If the decision is to be based on lack of evidence of these facts which are alleged in the petition, then the petitioner-appellant should be allowed opportunity to prove them at a trial instead of being ordered summarily to discontinue the hospital.
 

 Appellant is deprived of property — the right to follow his trade or profession — without due process of law as a result of this discriminatory, retroactive limitation on bed areas adopted without relation to the public health. This regulation distinguishes, as has been stated, between single rooms in hospitals licensed before and after October 1, 1956. It fails to distinguish between double rooms in hospitals licensed before and after that date. If it was proper, as it manifestly was, not to require the reconstruction of hospitals by enlarging the single rooms, the same principle could have been applied in case of the double rooms.
 

 
 *380
 
 The order appealed from should not have directed appellant to discontinue operation of the hospital, which was equivalent to dismissal of the petition on the law. On the other hand, appellant is not entitled to an order in the nature of a peremptory mandamus compelling the issuance of the license if there are other violations on account of which the license renewal could have been refused. The answer of respondent also charges that this hospital is not staffed with registered nurses to the extent required by the regulations. These nursing regulations are not limited to proprietary hospitals, but call for compliance everywhere in the city with section 110 of the Sanitary Code which requires a registered professional nurse to be assigned to the labor and delivery rooms when a patient is in active labor and a registered professional nurse to be on duty in the nursery. Although appellant’s affidavit states that he has complied with the requirements of section 110 of the Sanitary Code and all of the other nursing obligations, the Commissioner of Hospitals has not confirmed this and his affidavit indicates deficiency in regard to these matters on prior inspection of the hospital. The Sanitary Code requirements are not discriminatory, inasmuch as they apply throughout the city. Appellant should have an opportunity to try before the Special Term the issue of whether the hospital does comply with the Sanitary Code as he avers that it now does.
 

 The order appealed from should be modified by eliminating the direction to appellant to discontinue operation of Parkchester General Hospital and by remanding the matter to Special Term for a trial in the nature of an alternative mandamus, with costs to appellant to abide the event.
 

 Chief Judge Conway and Judges Desmond, Dye and Fuld concur with Judge Burke ; Judge Van Voorhis dissents in an opinion in which Judge Froessel concurs.
 

 Order affirmed.