THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* ARTHUR GEORGE ECKERT, Defendant.

County Court, Nassau County, June 27, 1955.

*Frank A. Gulotta, District Attorney (Henry De Vine* of counsel), for plaintiff.

*Edward L. Shenkenberg* for defendant.

LENT, J. This is a motion to inspect the minutes of the Grand Jury under section 952-t of the Code of Criminal Procedure.

The defendant was indicted for criminal negligence in the operation of a motor vehicle resulting in death, in violation of section 1053-a of the Penal Law which provides: "A person who operates or drives any vehicle of any kind in a reckless or culpably negligent manner, whereby a human being is killed, is guilty of criminal negligence in the operation of a vehicle resulting in death."

In substance, the indictment charges that the defendant operated his car in a reckless and culpably negligent manner whereby a human being was killed as follows: that at the time of the operation of his vehicle and the death of a young woman named in the indictment the defendant was an epileptic who suffered from seizures which would from time to time render him unfit to operate and control a car; that this condition was well known to him; that he had been advised by a physican not to drive an automobile; that on the date set forth in the indictment he drove his car to the right of an automobile truck immediately preceding him on Newbridge Road in this county although the highway was of insufficient width to allow automobiles

proceeding in the same direction to pass one another without leaving the paved portion of the road; that as the automobile of the defendant reached a point to the right of the truck, the defendant, by reason of his physical condition and the precarious position into which he had operated his automobile, left the paved portion of the highway and traveled into a bus stop in which the decedent was standing, striking and killing her.

The sufficiency of this indictment as a matter of law has not been put in issue by this motion. As will be evident, however, from later comment, the court is convinced from a reading of the minutes of the Grand Jury that some of the evidence received by it was illegal.

The direction in section 258 of the Code of Criminal Procedure, that " The grand jury ought to find an indictment, when all the evidence before them, taken together, is such as in their judgment would, if unexplained or uncontradicted, warrant a conviction by the trial jury ", is tempered by the admonition of section 256 of the Code of Criminal Procedure, that " The grand jury can receive none but legal evidence." There sometimes arises, as in this case, a situation where both legal and illegal evidence is before the Grand Jury and the rule under such circumstances is that the mere fact that illegal evidence has been produced does not authorize the court to set aside the indictment where the remaining legal evidence, taken together, is sufficient to warrant indictment under section 258 of the Code of Criminal Procedure (*People* v. *Leary,* 305 N. Y. 793; *People* v. *Keavin,* 123 Misc. 56; *People* v. *Smith,* 258 App. Div. 800; *People* v. *Sexton,* 187 N. Y. 495). These observations and the citation of authority in support thereof pose the question of the quantum of legal evidence necessary to support an indictment under section 1053-a of the Penal Law, where a person knowingly suffering from a disease, the manifestations of which may recur at any time and cause a sudden blackout or unconsciousness, drives a car and is involved in an accident, causing death to another. The question is so limited because it is not contended by the People that the manner in which the defendant operated his car, standing alone, constitutes more than actionable negligence. It is, however, their contention that there was sufficient legal evidence before the Grand Jury that the manner of operation and the course taken by defendant's automobile was due to an epileptic seizure at a time when defendant well knew that his physical impairment might produce the grievous result complained of.

The industry of counsel has been unable to produce any case in this or other jurisdictions directly in point although there is now pending but undetermined a demurrer to a similar indictment in one of the other County Courts of this State. Two cases which bear a marked factual resemblance to the instant case are reported in other jurisdictions and point up a sharp variance in both approach to and determination of the problem. In *State* v. *Gooze* (14 N. J. Super. 277), the New Jersey statute provided that " Any person who shall cause the death of another by driving any vehicle carelessly and heedlessly in wilful or wanton disregard of the rights or safety of others shall be guilty of a misdemeanor." In that case, the defendant's car was in a collision with two other cars. The driver of the first car testified that defendant's car was being operated across a white line and onto the wrong side of the road with apparently no driver at the wheel; that it struck his car and then continued in the same direction, striking a second car approximately forty feet to the rear of the first accident, causing death to a person in the second car. The defendant was found at this latter point collapsed at his wheel and in a semiconscious condition so that it was necessary to assist him from the car. The defendant frankly admitted that he had " blacked out ". He further testified that he had been previously treated for Meniere's Syndrome, a term applied to a disturbance in equilibrium usually the result of a malfunction of the three semicircular canals in the inner ear and accompanied by sudden attacks of dizziness. The defendant's physician testified that approximately a year earlier he had warned defendant never to drive alone since he might lose momentary consciousness or suffer a dizzy spell.

On these facts the court sustained a lower court conviction for violating the above-quoted statute, and speaking of defendant's conduct, said that " In driving his automobile alone on a through-state highway with knowledge that he might at any time suddenly, without warning, lose consciousness or suffer a dizzy spell, and having been cautioned not to drive alone, constituted an act of wantonness and a disregard of the rights or safety of others." (P. 286.)

This view was sharply criticized by the Supreme Court of South Dakota in *Espeland* v. *Green* (54 N. W. 2d 465 [S. D.]). There, an appeal from a lower court judgment in plaintiff's favor involved the application of a guest statute where the burden was on the plaintiff guest in a civil action to show willful and wanton misconduct on the part of the driver of the automobile in which

he was a passenger before recovery for damages could be had. The South Dakota courts had uniformly held that the burden of showing willful and wanton misconduct was in effect the same as requiring evidence similar to that in a criminal action. In the case then before it the evidence showed that the defendant sometimes suffered momentary unconsciousness due to " petit mal " epileptic seizures from which he had been suffering for some fifteen years prior thereto, that such attacks had occurred with increasing frequency of late and that they were sometimes of such severity that defendant fell to the ground. Before purchasing the automobile involved in the accident he had admitted to the car salesman that perhaps he should not buy the car because he might wreck it. The court in reversing the judgment entered in the court below said that the elements of deliberate recklessness necessary to support a finding of willful and wanton misconduct were lacking notwithstanding the fact that the defendant deliberately transported the plaintiff knowing of his susceptibility to blackouts. The court further commented that the willful exposure to a probability that harm to someone might ensue was not enough to come within the statute.

While distinguishing the factual situation from that in the *Gooze* case (*supra,* p. 286), by pointing out the absence of any testimony that the defendant in the South Dakota case had been warned by a doctor not to drive alone, the court nevertheless observed what it characterized as a fallacy in the New Jersey case, namely a statement by the New Jersey court where in referring to defendant's conduct it said, " It was reasonably foreseeable that if he ' blacked out ' or became dizzy without warning, its probable consequences might well be injury or death to another." The South Dakota court reasoned that the question of whether the blackout would occur was a most important factor in determining the probability of injurious consequences and the occurrence of a blackout should not be treated as an assumed fact in measuring the defendant's conduct.

While agreeing in result with the New Jersey court, we also observe the same fallacy in the holding latterly quoted. To hold that it was reasonably foreseeable that if the defendant blacked out or became dizzy without warning, its probable consequences might well be injury or death to another was to mistakingly apply the rule for determining the ordinary negligence necessary to sustain a plaintiff's verdict in a civil case to the wanton conduct necessary to support criminal negligence. We have no quarrel, however, with the rule first quoted since testimony that the

defendant had been warned by a doctor that he might without warning lose consciousness or suffer a dizzy spell would be sufficient to present to a jury the question of whether his driving in the face of such warning constituted driving carelessly and heedlessly in willful or wanton disregard of the rights or safety of others.

The New York courts have drawn the same distinction between the negligence necessary to support a civil action for damages and the negligence required to come within the condemnation of section 1053-a of the Penal Law, as did the South Dakota court in the interpretation of its guest statute. As was said in *People* v. *Bearden* (290 N. Y. 478, 483), " ' A distance separates the negligence which renders one criminally liable from that which establishes civil liability.' " (*People* v. *Rosenheimer,* 209 N. Y. 115, 123; *People* v. *Pace,* 220 App. Div. 495, 497.) The negligence required under section 1053-a must be such as is deserving of blame, censure, condemnation and punishment. To the ordinary negligence which is a prerequisite to the successful maintenance of a civil action " there must be added a reckless and wanton disregard of the rights of others sufficient to amount to an intent to inflict the injury or at least to be indifferent whether the injury happens or not." (*People* v. *Waxman,* 232 App. Div. 90, 92.) " In sum, the evidence must disclose what would almost be tantamount to a wilfulness to do harm on the part of the offender." (*People* v. *Brucato,* 32 N. Y. S. 2d 689, 691.) " There must exist in the mind of the accused at the time of the act or omission, a consciousness of the probable consequences of the act, and a wanton disregard of them." (*People* v. *Carlson,* 176 Misc. 230, 232.)

In an approach to the determination of the evidence requisite to making out a prima facie case of a reckless and indifferent attitude by the defendant where there is testimony showing that defendant suffered from epileptic seizures, the court's language in the case of *People* v. *Bonaventura* (271 App. Div. 900) is indicative of the yardstick which should be required. In that case defendant's brakes were defective due to the rubber cup over one end of the piston on the master cylinder being both off-center and torn. Prior to the accident, the brakes were inadequate but would work under constant pumping and foot pressure. They had steadily deteriorated and were useless on the date of the accident, thus causing a death. There was no proof that the tear did not suddenly occur. Since the tear had rendered the brakes absolutely useless as distinguished from

inadequate, the court reversed a conviction on the ground that the proof failed " to show notice to defendant which would serve to make plain to her the grave nature of the latent defect and the dire jeopardy in which she placed the lives of (others) ".

From the judicial quotations above, it becomes plain that unless the defendant herein had received the warning of the doctor referred to in the indictment or there was some other legal evidence from which a jury would be justified in finding that he knew the gravity of his illness and the possible consequences of his driving, the indictment should be dismissed. If the legal evidence merely shows that defendant knew he was an epileptic, drove an automobile, suffered an attack and as the result of such seizure, lost control of his car causing death to another, it falls short of this requirement.

Should a trial jury, as the result of a grand jury's indictment, convict on such evidence alone, it would not be on any other theory than that the defendant in the exercise of ordinary judgment knew or should have known that the blackouts from which he suffered might occur at any time, causing him to lose control of his car and inflict death upon another. To apply this rule as a guide to what would warrant conviction by a trial jury would be merely to submit to the jury the question of whether defendant was criminally negligent on the " reasonable man " doctrine of the civil forum. Under such a rule, anyone knowingly suffering from a heart ailment, diabetes or any of a number of diseases likely to produce sudden dizziness, blackouts, momentary loss of consciousness or various symptoms productive of loss of control of a car, would be rendered amenable to the statute, assuming that there was a causal connection between the disease, loss of control of the car and consequent death. The operation of a car by such persons does not per se indicate the " ' devil may care ' " attitude evincing a " contemptuous disregard * * * to life and limb of others " which is an essential ingredient of section 1053-a of the Penal Law (*People* v. *Brucato*, 32 N. Y. S. 2d 689, 691, *supra*).

Accordingly, this court rules that in the instant case in order to sustain the indictment there must be sufficient legal evidence before the Grand Jury to show (a) that defendant was an epileptic — (b) that he knew of his epileptic condition — (c) that his knowledge of his condition was such as would make plain to him the dire jeopardy in which he would place others by the operation of his automobile — (d) that he nonetheless drove his car — (e) that he had an epileptic seizure while driving — (f) that such

an attack caused him to lose control of his car — (g) that an accident occurred while defendant's car was out of control, and (h) that death to another resulted.

There was sufficient legal evidence before the Grand Jury to show that the defendant knew that he was an epileptic; that he suffered from dizzy spells and blackouts; that he had been treated for his condition; that on the day named in the indictment he drove his car; that while he was attempting to pass a truck on the right, his car left the paved portion of the highway; there was physical evidence that its course at the point described an arc and that it eventually struck its victim resulting in her death. There were no eyewitnesses to the accident. There was no testimony offered of anyone at the scene who noticed anything unusual about the defendant's demeanor. The defendant made several conflicting statements about his physical condition to the police. He maintained, however, that as he attempted to pull to the right of the truck, he struck his head on the sun visor of his car and that he could not tell what happened thereafter until he got out of his car and observed the deceased. Asked if he had a blackout of some kind, he stated, "Well, I don't know."

In order to show that the defendant knew of his condition and the tragic consequences which might result from his continued driving, one of the physicians who had treated him testified without waiver of privilege by the defendant. In substance, the doctor testified that he had treated the defendant commencing on February 15, 1949, and ending January 30, 1950; that when the defendant first came to him the defendant knew the nature of his ailment and had been to various clinics and institutions; that the doctor had prescribed various drugs and anti-convulsants for him and that the seizures had been controlled temporarily but that on January 30, 1950, the defendant, who had failed to continue his response to such treatment, announced that he was going to another institution. Sometime between these dates a conversation took place on one of the defendant's visits to the doctor's office. Noticing that defendant had been driving a car, the doctor said to his patient, "In God's name, some day you will get in trouble. Why don't you stop driving your car?" The defendant answered that driving stimulated him, that in fact he drove a race car, and said, "I hope nothing happens. The only trouble is that I never know when it's going to happen."

The doctor further testified that he had agreed with the defendant's continual driving since he had to make his living.

We will assume that the jury had a right to construe this discussion as a warning to defendant not to drive his car and that it showed notice to and knowledge on the part of the defendant of the gravity of his illness and the dire consequences which might possibly flow from his continued driving of the car. Since the record of the proceedings before the Grand Jury is otherwise barren of any evidence from which such knowledge could be inferred under the rule above enunciated, the competency of such testimony is of grave import.

Section 352 of the Civil Practice Act provides in part "A person duly authorized to practice physic or surgery * * * shall not be allowed to disclose any information which he acquired in attending a patient in a professional capacity, and which was necessary to enable him to act in that capacity".

Section 354 of the Civil Practice Act reads in pertinent part " The last three sections apply to any examination of a person as a witness unless the provisions thereof are expressly waived upon the trial or examination by the person confessing, the patient or the client. * * * The waivers herein provided for must be made in open court, on the trial of the action or proceeding".

The foregoing provisions of the Civil Practice Act are applicable to criminal actions (*People* v. *Murphy,* 101 N. Y. 126).

Section 352 of the Civil Practice Act (*supra*) would appear to generally restrict the privilege to information necessary to enable the physician to prescribe for or treat the patient (*Edington* v. *Aetna Life Ins. Co.,* 77 N. Y. 564). It might be argued under such an interpretation that since the doctor knew the patient's history, the information or disclosure that the defendant was driving his car was unnecessary to enable the physician to prescribe for or treat defendant and that, hence the warning, if such it were, implicit in the discussion and the defendant's admission that to continue driving was known to him to be dangerous, did not come within the condemnation of the statute. It cannot be denied, however, that except for prior confidential disclosures made by the defendant, resulting in the physician's ultimate diagnosis, there would have been no warning. The very nature of the physician's employment by and treatment of the defendant prompted the warning and compelled the defendant's disclosure that he knew that his driving was

fraught with peril. Moreover, while it must be conceded that there are times when the manifestations of epilepsy are plain to the ordinary layman, in the absence of such a manifestation it requires expert skill to detect the disease. Under such circumstances, the doctor's admonition was given as an expert. Since the defendant's disclosure of his awareness of the danger was given as a necessary incident of the physician-patient relationship and the warning was that of a doctor to a patient, such testimony should not have been received by the Grand Jury (*Nelson* v. *Village of Oneida,* 156 N. Y. 219; *Matter of Coddington,* 307 N. Y. 181). The prohibition of the statute (Civ. Prac. Act, § 352) is absolute and remains effective unless the provisions are expressly waived on the trial by the defendant (Civ. Prac. Act, § 354). Under the circumstances presented here, it is the duty of the court to hold that such testimony was incompetent (*Weil* v. *Weil,* 151 App. Div. 622). Without such testimony, one of the elements of the crime is lacking.

There exists also another equally compelling reason for the dismissal of this indictment. The evidence relied on to establish that the defendant suffered an epileptic seizure which caused him to lose control of his car, is wholly circumstantial. This alone does not condemn it but if such proof is wholly circumstantial, the inference of the defendant's guilt must be established with certainty. The Grand Jury could not accept such proof unless such proof, unexplained or uncontradicted, would warrant conviction by a trial jury. The facts from which the inference of defendant's guilt is drawn must be inconsistent with his innocence and establish to a moral certainty every other reasonable hypothesis except that of guilt. Here the conclusion that the defendant suffered an epileptic seizure at the time of the accident is predicated solely on evidence of his past medical history and the erratic course taken by his car before it struck its victim. This comes within the condemnation of the rule that to circumstantially establish an ultimate fact, inference may not be based solely on inference. The fact of his driving in an erratic manner is as easily susceptible of the inference that he did hit his head on the sun visor, as it is of the conjecture that he must have suffered an epileptic attack at the time. The proof before the Grand Jury was insufficient as a matter of law to establish any causal connection between the defendant's epileptic condition and the decedent's death (*People* v. *Jackson,* 255 App. Div. 688, citing *People* v. *Giordano,* 213 N. Y. 575, 580; *People* v. *Galbo,* 218 N. Y. 283, 293; *People* v. *Suffern,* 267 N. Y. 115, 127;

*People* v. *Lewis,* 275 N. Y. 33, 39, and *People* v. *Woltering,* 275 N. Y. 51, 61).

Undoubtedly, this defendant should not be permitted to operate a motor vehicle. However, he should not be held for trial upon an indictment where one of the essential elements of the crime has been proved by incompetent evidence and another essential ingredient by evidence insufficient in law.

Motion to inspect the Grand Jury minutes granted and upon the inspection, the indictment is dismissed. Submit order accordingly.