Ellsworth N. Lawrence, Acting County Judge.
In November, 1958, Joseph Meilice laid an information in City Court, Buffalo, charging the defendant and one D’Angelo with extortion. Later in the same month the Erie County Grand Jury indicted the two defendants for extortion, attempted extortion and conspiracy, Meilice being named as the victim.
Sometime thereafter the complainant Meilice was indicted by a Federal Grand Jury for counterfeiting and was confined in the Erie County Jail. While there, his behavior became strange, erratic and irrational. He was transferred to a hospital for observation, following which he was, in February, 1959, adjudged by the Erie County Court to be incompetent.
In April, 1959, the defendant secured an order in Erie County Court authorizing him to examine the records of the incompetency proceeding. Presumably this was in accordance with the Mental Hygiene Law (§74, subd. 6).
The Meilice incompetency records were examined by Dr. Bruno Schutkeker, chief psychiatrist at the Veterans’ Hospital, who does not appear to have examined Meilice personally. In an affidavit made in August, 1959, Dr. Schutkeker expresses the opinion from his examination of those records that Meilice was suffering from schizophrenic reaction, catatonic type at the time the other doctors examined him in January, 1959, that such mental illness develops over a period of many months and that Meilice could not therefore have been competent to testify before the Grand Jury in November, 1958.
The defendant now moves for an order to inspect the Grand Jury minutes and to dismiss the indictment, or, in the alternative, for a hearing to determine the mental competency of Meilice at the time of the indictment.. The moving papers include the affidavit of Dr. Schutkeker and affidavits by the defendant setting forth his belief that Meilice was the only Grand Jury witness.
The District Attorney has submitted the Grand Jury minutes for examination by the court. This is the general practice adopted by the courts on motions of this kind. (People v. Seaman, 174 Misc. 792.) That practice is to be commended here (People v. Bob, 233 App. Div. 94), where the examination of the *1058 testimony of the witness might throw some light upon the question of his competency (Hand v. Burrows, 23 Hun 330, 331), although it is arguable that there is no necessity for the court to examine the minutes where the moving papers sufficiently present the question to be determine. (Cf. People v. Fuller, 156 Misc. 404, 417.)
Upon examination I find nothing in the minutes to warrant their inspection by the defendant. The evidence, if believed by the Grand Jury, was legally sufficient to justify the indictment. (People v. Keppler, 25 N. Y. S. 2d 804.)
For these reasons it becomes unnecessary to consider whether the defendant’s moving papers merely allege conclusions and opinions. (See People v. Fullington, 154 Misc. 375; People v. Pryor, 11 N. Y. S. 2d 393.)
The motion to permit the defendant to inspect the Grand Jury minutes is therefore denied.
The motion to dismiss the indictment must likewise be denied. Although Meilice was adjudged to be mentally ill in February, 1959 and although that adjudication may well be related back to the time of his mental examination in January, 1959, we must start with the presumption that he was sane in November, 1958 when the Grand Jury was in session. The general rule is that all persons are competent witnesses where they have sufficient mental capacity. (4 Ford, Evidence, § 497.)
The grand jury must be taken to be the sole judge of the competency and credibility of the witnesses produced before it. Not only does it hear their testimony but it also sees the witnesses, observes their appearance and the manner of their testifying. If the grand jury has doubts as to the competency of any witness, it has power to examine the witness at length on the question of his competency, to subpoena and examine other witnesses upon the same issue (Code Crim. Pro., § 250) and as always, to seek the advice of the court and the District Attorney (Code Crim. Pro., § 255).
This is so because the rules of evidence in civil cases apply also to criminal cases (Code Crim. Pro., § 392) and because the grand jury has the same power as a court, not only to preliminarily examine a witness before he is sworn to ascertain his capacity and the extent of his knowledge (Civ. Prac. Act, § 365; Barker v. Washburn, 200 N. Y. 280; Fritsch v. Central Trust Co., 262 App. Div. 551; 4 Ford, Evidence, § 498), but also to examine him further after he is sworn on the question of his mental competency as bearing upon his credibility and degree of intelligence. (Ellarson v. Ellarson, 198 App. Div. 103.)
*1059 All this being within the power of the grand jury, it must follow that when a grand jury has returned an indictment (if the evidence as shown by the minutes is legally sufficient), the grand jury has resolved competency and credibility questions in favor of any witness upon whose testimony they have relied.
The final problem is whether the defendant is entitled to an order directing a hearing to determine the mental capacity of a Grand Jury witness at the time of indictment. Research has not disclosed any case where such an order has been granted, but this application should not be denied merely for lack of precedent.
It must be denied however, for the same reason that the motion to dismiss the indictment here is being denied.
The grand jury is an inquisitorial body (Code Crim. Pro., § 245), whose duty it is to inquire into crimes and to present indictments as accusations thereof (Code Crim. Pro., § 247), based on legal evidence. (Code Crim. Pro., §§ 248, 249.) The grand jury must, necessarily, be allowed to make its own determination as to the competency and credibility of witnesses.
To determine otherwise would take us into the realm of speculation, resulting in a plethora of such applications. It would invade the province of the grand jury and curtail their power to “ diligently inquire and true presentment make ” (Code Crim. Pro., § 238). The judge holding such hearings would be called upon to substitute his judgment for that of the grand jury and in cases where there was more than one witness, he might have to weigh the testimony of one witness against another and to determine upon whose testimony he should rely without having seen any of the witnesses himself.
Unless we are prepared to say that a judge is to become a trier of the facts or of some of the facts, this application cannot be granted. It would undermine the grand jury system.
Submit order denying each of the motions.