Ellsworth N. Lawrence, J.
The defendant was formerly Executive Secretary of the Civil Service Commission of the County of Suffolk. He is now Commissioner of Jurors of that county.
In the Summer of 1960 the Suffolk County Grand Jury commenced an investigation into irregularities in examination papers of candidates for Suffolk County police positions. The investigation was conducted upon a wide scale and continued until December, 1960.
The Grand Jury returned an indictment against the defendant containing 35 counts. Fourteen of these were for forgery in the *487 third degree; 7 were for a violation of section 1838 of the Penal Law; 7 were for a violation of section 2050 of the Penal Law; the remaining 7 were for perjury, first degree, allegedly committed before the Grand Jury where the defendant had testified under waiver of immunity.
The specific charges were centered around the examination papers of candidates Silvestri, Hamilton, Scola, Romler, Robertson, Dobler and Gatz; the first three of these were candidates for appointment as patrolman in an examination taken April 20, 1957; the next two were candidates for promotion to lieutenant in an examination taken on November 16, 1957; the last two were candidates for promotion to sergeant in an examination taken on November 16, 1957.
All of the examination papers consisted of: first, an identification sheet containing among other thing's the handwritten name of the candidate and a serial number; secondly an answer sheet containing the same serial number and appropriate spaces for multiple answers to the questions. The examination papers for lieutenant also included essay questions.
At the start of the examination, each candidate was required to fill in the identification sheet in his own handwriting. He was then required to handprint upon the answer sheet such identifying data as the place of the taking of the examination, the position sought and further information.
In order to answer the questions on the answer sheet, the candidate, working with a printed questionnaire prepared for the County Civil Service Commission, was required to mark an “ x ” in one of the answer spaces, selecting that space which he believed would correctly answer the question.
Where essay questions were used, they were required to be in the candidate’s handwriting.
At the end of the examination, the candidates submitted all their papers to the monitors for the commission.
The papers were thereafter kept at the commission offices. In the ensuing weeks they were marked by employees at those offices. The method of marking consisted of placing a punched-out key answer chart over the answer sheet and using a red pencil to mark an “ x ” where the space was blank. The person marking the paper, referred to as a “ rater ’ ’, then tallied the result and graded the paper.
From these grades lists were prepared indicating both the names of those who had passed the examination and the grades received. Later appointments were made from such lists. Certain other factors, not particularly material here, were *488 also involved. These included certain re-evaluation of grades made by the commission, the taking of physical tests and the like.
The obvious purpose of having separate identification and answer sheets was to insure that the 1 ‘ rater ’ ’ would not know whose paper was then being graded, for the practice was that the identification sheets and the answer sheets were kept separate from each other during the grading process.
The examination papers were required to be kept in the office of the Civil Service Commission by the provisions of subdivision 4 of section 7 of the Civil Service Law, regulation 4 of the Regulations of the Department of Civil Service (4NYCRR 70) and rule VIII, section 7 of the Suffolk County Civil Service Rules. Thus these are records which were deposited in a public office “by authority of law”.
It is the People’s claim that the original answer sheets of the seven persons named herein were removed by the defendant from the civil service office, that the same were, therefore, concealed or destroyed in violation of sections 1838 and 2050 of the Penal Law, that the answer sheets of such persons found in the office of the commission during the investigation are forgeries made by the defendant and that the defendant lied in respect thereto during his testimony before the Grand Jury under waiver of immunity. It is upon those bases that the 35 counts were returned in the indictment against the defendant.
The defendant has moved to inspect the Grand Jury minutes or alternatively for dismissal of the indictment. The Grand Jury evidence has been examined by the court. (People v. Gelia, 19 Misc 2d 1056, 1057.)
The handwriting experts testified before the Grand Jury that the handprinting on each of the seven answer sheets was in their opinion forged and was forged by the defendant. The witnesses were competent to testify. There is nothing in section 332 of the Civil Practice Act which precludes the admission of expert testimony of handprinting as distinguished from handwriting. Writing includes printing as well as writing. (Penal Law, § 3.) See, also, section 56 of the General Construction Law defining the term writing as including every legible representation of letters upon a material substance, except when applied to the signature of an instrument.
So long as the genuine handwriting or handprinting of one person may be found to possess peculiar characteristics, the expert, comparing such with the disputed document, may express an opinion that such was not in the handwriting or handprinting of that one person and the expert may also by comparing the *489 genuine handwriting or handprinting of another person with the disputed document, testify that in his opinion the handwriting or handprinting upon the disputed document was in the handwriting or handprinting of the second person.
Such evidence is competent. Its weight is for the jury. There is nothing to the contrary in Matter of Hopkins (172 N. Y. 360) nor Matter of Caffrey (174 App. Div. 398, affd. 221 N. Y. 486).
The answer sheets were a part of the ■ examination papers. These were written instruments within the meaning of section 880 of the Penal Law and subsequent sections. If the answer sheet was forged, then the examination paper was forged and the identification sheet of the examination paper bore a signature. This process might be compared to the raising of the amount payable on a negotiable instrument or the insertion of a different page in a will consisting of several pages.
There is no requirement in subdivision 3 of section 889 nor in subdivision 3 of section 881 of the Penal Law which limits those sections dealing with forgery in the third degree to cases “ designed to protect senders of letters, telegrams, reports, written communications and instruments from the unlawful activities of those who seek to injure and defraud them ’ ’, as contended by the defendant. (People v. Abeel, 182 N. Y. 415, 420-421.) Intent to defraud is not an essential element of the crime of forgery in the third degree under subdivision 3 of section 889.
Subdivision 1 of section 1838 of the Penal Law is not limited to cases involving peculation by public officers. The charge is that the defendant mutilated, concealed or destroyed the answer sheets being part of the examination papers appertaining to his office.
Section 2050 of the Penal Law was not designed only to embrace those papers which “ are publicly important, are permanently valuable and which will serve a useful purpose after they have been deposited in a public office ” as contended by the defendant. It is enough under that section that they be records or papers filed or deposited in a public office or with any public officer by authority of law. The legal authority for the filing or depositing of such papers is found in the Civil Service Law and Regulations already mentioned.
We now turn to the crime of perjury in the first degree. By sections 1620 and 1620-a of the Penal Law the elements of that crime, as alleged here, are the giving of false testimony under oath, the materiality of the testimony and that the same is given willfully and knowingly.
No question is here presented as to whether the testimony was given under oath or as to whether it was material.
*490 The examination by the court of the testimony of the defendant before the Grand Jury has revealed that this was not a case in which the defendant was expressing an opinion or a belief nor one in which, a defendant was compelled or forced under duress to make an unequivocal answer where he was attempting to express an opinion or a belief. (Cf. People v. Smilen, 33 N. Y. S. 2d 803; People v. Flanagan, 199 App. Div. 135.) The testimony can be said to have been given “with design * * * with some degree of deliberation ’ ’ (Kraus-kopf v. Tollman, 38 App. Div. 273, affd. 170 N. Y. 561).
There was evidence before the Grand Jury from which that body could well determine that this testimony was given willfully and knowingly. He swore under oath that he did not fill out the information which appeared on the answer sheets in question. He also testified that he had nothing to do with the substitution of the answer sheets.
There is no rule now in effect in New York requiring the testimony of two witnesses in order to indict nor in order to convict for the crime of perjury. (People v. Doody, 172 N. Y. 165, 173.) Perjury in a proper case may be established by circumstantial evidence.
The decision in Matter of Dobler v. Kaplan (27 Misc 2d 15) has no application here. That was an article 78 proceeding involving the question of whether certain police officers could be removed from office by the State Civil Service Commission.
The only question remaining is one submitted subsequent to the original motions, but treated as a part thereof.
As the People’s brief indicates, there was introduced in evidence, during the Grand Jury investigation, a staff report made by the State Civil Service Commission specifying numerous frauds and irregularities concerning civil service examinations in Suffolk County. This report was in fact introduced in evidence at the fourth session of the Grand Jury held on September 1, 1960.
The defendant did not testify under waiver of immunity until the seventh session on October 13. (He thereafter testified on Oct. 27, Nov. 17 and Dec. 8.) The indictment was returned on December 19, 1960 after the Grand Jury had been in session 13 times. There were over 1,400 pages of evidence.
As against this defendant, the staff report was of course hearsay. Yet it was a report made by a State agency in the performance of ‘ ‘ its duties ’ ’.
In People v. Farson (123 Misc. 351) it was held that the refined and stringent rule with respect to the admissibility of *491 books or transcripts therefrom should not prevail in the Grand Jury room.
This is not a case where the indictment is supported only by illegal or hearsay evidence. (Cf. People v. Baxter, 98 Misc. 552.) Judge Sobel indicates that an indictment should be dismissed in this class of cases merely in an instance where the onlv evidence presented is illegal. (See People v. Porter, 54 N. Y. S. 2d 3,10.)
In a line of cases going back at least to People v. Sexton (187 N. Y. 495, 511, 512) and followed in People v. Grout (174 App. Div. 608, appeal dismissed 222 N. Y. 521); People v. Barbour (152 Misc. 39); People v. Smith (258 App. Div. 800) and People v. Leary (305 N. Y. 793) (see, also, People v. Eckert (208 Misc. 93) it has been held that where sufficient legal and competent evidence was presented to a Grand Jury, the reception of illegal and incompetent evidence would not authorize the court to set aside an indictment if the remaining legal evidence, taken together, is sufficient to warrant the indictment.
After a careful reading of all the evidence, I am satisfied that the staff report did not contribute to a finding of the indictment and that the defendant’s rights were not prejudiced.
Before the Grand Jury had completed their investigation, they had good and sufficient legal evidence to justify every count of the indictment against this defendant. The motion to inspect the Grand Jury minutes is denied. The motion to dismiss the indictment is denied.